## MOSELEY v. DORAN.
### No. 1491.

Court of Appeal of Louisiana. First Circuit.
Oct. 3, 1935.

Guillory & Guillory, of Ville Platte, for appellant.

Dubuisson & Dubuisson, of Opelousas, for appellee.

ELLIOTT, Judge.

Henry Vincent Moseley brought suit against John Doran for $200 alleged to be the balance due him on account for rent of a store building in the city of Opelousas. The plaintiff alleges that he leased his building to the defendant for one year at $20 per month for the purpose of operating a used furniture store. That on February 1, 1935, or in the early morning of February 2, 1935, defendant abandoned the premises with the intention of defrauding him of the balance due him for rent, and in carrying out his purpose he loaded certain of the furniture contained in the building into a truck belonging to him and drove the truck, with the furniture with which it had been loaded, to the residence of William Reed in the parish of St. Landry. That a lessor's privilege exists in his favor on said truck and on the furniture in it to secure him for the amount due him for rent.

He alleges that the defendant intended to immediately leave the parish of St. Landry with said property with the intent to defraud him and to defeat his claim on account of the balance due him for rent.

A writ of provisional seizure issued and the truck with the things in it were seized on the premises of William Reed, some 4 or 5 miles from Opelousas, and held for the purpose of paying the amount due the plaintiff.

The defendant Doran appeared and moved to dissolve the seizure on the ground that the truck and its contents were not on the leased premises at the time of the seizure and had never been kept thereon; and, further, in the alternative, that the truck and its contents consisted of tools and instruments necessary for the exercise of his occupation and trade whereby he made his living and that of his family and was therefore exempt from seizure under the Constitution and laws of the state. This motion was overruled. Defendant then under reserve of his motion filed an answer to plaintiff's demand. In his answer he denies being indebted to the plaintiff; he also denies his other averments and sets out his defense at length. We do not undertake to recapitulate all of defendant's averments, but he repeats in his answer the grounds of his motion to dissolve and alleges that he is engaged in the trade of buying and selling secondhand furniture and had rented plaintiff's building by the month for the purpose of carrying on his business. That he had paid his monthly rent and owed plaintiff nothing at the time he vacated the building. Defendant refers to the building in his answer as a warehouse. He alleges that on February 1, 1935, having sold every article of furniture he had in the warehouse and having decided to go to New Orleans to purchase a load of furniture and bring it back to be stored in said building, he removed his working tools therefrom, loaded same on his motortruck and drove his truck to the home of William Reed, his father-in-law, where he and his family then lived. That on the following morning he removed certain articles from the premises of his father-in-law, where same had been stored, and placed them in his truck to be taken to his residence in New Orleans. That he had no intention of abandoning the building or defrauding the plaintiff, but intended to return immediately after purchasing a load

of furniture, store same in the leased building, and continue his said business and occupation. That the facts alleged by the plaintiff upon which the provisional seizure had been obtained were untrue. That said truck and tools and other articles seized were not kept on the leased premises and for that reason were not subject to the lessor's privilege and were not liable to seizure on that account, even if rent was due. Furthermore, that said truck and tools are necessary for the exercise of his trade of secondhand furniture dealer, by which he gains his living and that of his family, and are therefore exempt from seizure under the laws of the state.

As ground for a demand in reconvention, he alleged that the deputy sheriff, acting under the instructions of the plaintiff, who was present at the time of the seizure, failed to appoint a keeper to take charge of the property and left it all out in the weather without providing any shelter for the same. He claims damages resulting from the seizure amounting in the aggregate to $1,000. He prayed that plaintiff's demand be rejected and that he have judgment in reconvention against the plaintiff for $1,000, with interest, and for all general equitable relief in the premises. The trial resulted in a judgment in favor of the plaintiff for $15, with interest, the provisional seizure was maintained, and the property seized was ordered sold to satisfy the amount due the plaintiff. Defendant's demand in reconvention was rejected. Defendant has appealed.

█ The Constitution provides that appeals to the courts of appeal must be tried on the original record. The clerk of the lower court certifies that the present record is the original record, including all pleadings, evidence, and documents in the case, but the original judgment is not in the record and its absence is not explained nor accounted for. There is no motion to dismiss and the record contains what purports to be a true copy of the original judgment showing the signature of the judge. With this copy before us, and taking into account the provisions of Act No. 234 of 1932, we have decided to act on the appeal as if the original judgment had been brought up in the record as should have been done. The defendant does not question the legality of the seizure. As for the claim of the plaintiff for $200, the evidence shows that he rented his store building to the defendant, not for the period of one year, but for a monthly rental of $15, payable in advance.

The rent commenced on the 24th of November, 1934, and was paid monthly up to January 24, 1935, on which day he commenced another month, and occupied the property for one week. The week commenced January 24th and continued for the first day of February. He vacated it during the night of February 1st. As the monthly rent was payable in advance, he owed plaintiff under the law for one month rent commencing January 24, 1935. Civil Code, arts. 2686, 2689, and 1817. The judgment in favor of the plaintiff for $15 is therefore correct.

█ Defendant contends that the property seized is not subject to plaintiff's privilege as lessor. Property exempt from seizure is not subject to the privilege. The return of the sheriff shows that he seized, "one truck and lot of furniture on the premises of William Reed." The return is specific enough as to the truck, but it does not specify the particular articles of furniture seized. The Civil Code, article 2705, and Code of Practice, article 644 (amended by Act No. 183 of 1932) exempt from seizure the debtor's bed, bedstead, and that of his wife and family. It cannot be said from the return that the furniture seized constituted the debtor's bed, bedstead, and that of his wife and family. The defendant as a witness in his own behalf testifies positively that he did not load a bed or bedstead when moving the property. We feel that the preponderance and the more reliable evidence is to the effect that he did, and that there was a bed and bedstead on the truck at the time of the seizure, yet he swears that he did not load any and there is no specific claim for a bed nor bedstead. In his testimony, he specifically enumerates as exempt the truck, stepladder, gas stove, tools, etc., on said truck; we therefore limit our review of the exemption claimed to the truck, stepladder, gas stove, tools, etc., on said truck. The law Civil Code, article 2705, under the subject Obligations and Rights of Lessor, provides: "The lessor has, for the payment of his rent, and other obligations of the lease, a right of pledge on the movable effects of the lessee, which are found on the property leased." And under the subject of Privileges, article 3218: "The right which the lessor has * * * on the movables which are found on the place leased, for his rent."

Article 2709 provides that "In the exercise of this right, the lessor may seize the objects, which are subject to it, before the lessee takes them away, or within fifteen days after they are taken away, if they con-

tinue to be the property of the lessee, and can be identified." In this instance, the property having been seized the next morning after it was taken away, the removal had no effect provided the truck and things in it were found on the property or on the place leased, within the sense and meaning of the law on the subject.

The truck could not be kept inside the leased building; there was no shed attached to it nor outside inclosure which formed part of the premises. The evidence shows that defendant and his family at first had rooms rented from Mrs. Ledoux, who lived near the leased building, and while they roomed there the truck was often left out in the open in front of Mrs. Ledoux's. At times it was left in an alleyway belonging to plaintiff alongside of the leased building and at other times it was left out in the open in front of the leased building. About a week or ten days before vacating the leased building, although defendant testifies to the contrary, we are satisfied that he lived in the building behind a partition which he erected across the back part of the building, and that the truck during this time was kept either in the alley adjacent to the leased building or out in the open in front of it. In connection with the testimony as to how and where the truck was kept, in acting on defendant's demand, we must take into account his averments on the subject. He alleges in his motion to dissolve: "That said truck and its contents above described were not, at the time of the aforesaid seizure, on the premises of the plaintiff, nor were said truck and its contents ever kept on said premises or removed therefrom.

In the alternative, mover shows that said truck and its contents provisionally seized as aforesaid constitute tools and instruments necessary for the exercise of his occupation, trade, or profession by which he gains his living and that of his family, and are exempt from seizure under the Constitution and laws of the state of Louisiana.

In his answer he substantially repeats the claims stated in his motion to dissolve, but says in addition thereto: "Respondent further shows that his said motor truck, tools and other articles provisionally seized as aforesaid were not on the rented premises at the time of said seizure, nor were they ever kept on said premises. And for the further reason that said truck and respondent's tools thereon are an absolute necessity to respondent's trade, business or occupa-

tion of secondhand furniture dealer, by which he gains his living and that of his wife and children, as said truck was used by respondent in or was his sole means of transporting furniture from place to place and delivering same when sold, and constitute tools and instruments necessary for the exercise of his said occupation, trade or business and therefore exempt from seizure. All of which was well known to the plaintiff."

In his pleadings he at first pleads that the truck was not, and never was, kept on the leased premises, but he immediately afterwards pleads that as a matter of fact it was an absolute necessity for the exercise of his trade, business, or occupation of secondhand furniture dealer and was used by him in and was his sole means of transporting furniture from place to place and delivering same when sold, constituting a tool and instrument necessary for the exercise of his said occupation, trade, or business. His testimony is to the same effect.

Under his pleadings and testimony, the truck must for the purpose of our ruling be regarded as having been by him kept on the leased property, and we look on it as property of the lessee found thereon, within the sense and meaning of the law on the subject. It is therefore subject to the lessor's privilege claimed on it by the plaintiff.

■ The next matter is whether there is before us for decision a question of exemption based on the hypothesis that tools and instruments are necessary for the exercise of a trade by which means a debtor gains his living and that of his family. Under Civil Code, art. 2705; Code Prac. art. 644, as amended. The theory of the exemption law is that the debtor will continue to make his living and that of his family by working in his trade and needs his tools and instruments for that purpose, but when it is no longer the debtor's purpose to follow the trade in which the particular tools and instruments are necessary, for instance when he abandons the trade or calling which he is pursuing without manifesting an intention to follow it any longer, then the reason for the exemption ceases to exist and that law must have force and effect which provides that: "Whoever has bound himself personally is obliged to fulfill his engagements out of all his property, movable and immovable, present and future." And that "The property of the debtor is the common pledge of his creditors," etc. Civ. Code, arts. 3182, 3183.

In this case the plaintiff made mistakes in his averments, and we have not agreed with him as to the duration of the lease and the consequent amount due him thereunder.

But as for the defendant, he contradicts himself and is contradicted by others and by facts and circumstances more convincing than his asseverations. We differ with him throughout the case. In one place he testified, "I didn't do any retail business;. I sold the furniture to dealers." In another he said, "I don't have the money to sell on terms; I sell for cash and when I get a chance to sell for retail, I sell it."

He avers in his answer that on February 1, 1935, having sold every article of furniture that he had in said warehouse rented from plaintiff, he decided to go to New Orleans to purchase a load of furniture and bring it back to Opelousas to be stored in his rented building. That he cleaned out said building and removed his working tools therefrom, loaded same in his motortruck and drove the truck to the home of his father-in-law in the parish of St. Landry, where he and his family were then residing. As a witness he testifies that it was his intention to return and resume business, etc., but his actions indicate otherwise. His conduct indicates that he had abandoned his business in Opelousas and was endeavoring to get away, and had no intention of returning to resume his trade and calling there as a secondhand furniture dealer, and nothing indicates that he intended to follow the same trade or calling elsewhere. The evidence shows that after dark during the night of February 1, 1935, and without notice to plaintiff of his intention to move, he hired the help of two men and loaded everything in the house into his truck. Plaintiff had given him permission some time before to erect a partition across the rear end of the building, which he proceeded to do. With his helpers he took this partition down during the night and loaded the material on his truck. He testifies that he loaded in his truck his tools and stepladder and things he used to haul furniture and some old pipe. One of his helpers testified that he was called at night about 8:30. They called another party and they loaded the truck, putting in it comforts, blankets, one large chair, gas heater, four or five oil stoves, four bird cages, a table, etc., and the deputy sheriff testifies that he noticed other things on the truck when he seized it which appeared to be household furniture. The fact that defendant hired two helpers after dark and immediately commenced to load

the truck does not speak well for his purpose. By hiring two helpers it appears likely that he had considerable to load, intended to do it quickly, and that some of the articles were heavy. When defendant rented the building, he placed on it a sign with "Used Furniture for Sale" or words to that effect. The next morning this sign was gone. The evidence does not show that it was loaded into the truck, but circumstances indicate that it was likely done. After surreptitiously getting everything belonging to him out of the building, he left the keys with a negro man living near and departed that night with the loaded truck. The next morning the negro turned the keys over to Mr. Moseley with the statement that Mr. Doran told him to deliver them to him. Doran testifies that he gave the keys to the negro man in order that the negro could clean out the building next morning, and that he intended to return and get the keys from the negro. This explanation is not satisfactory. It is our conclusion that defendant had no intention of returning, that he had permanently abandoned his trade and calling as secondhand furniture dealer in Opelousas and never intended to return nor to pay the plaintiff the balance due him, but to defraud him of the month's rent.

From Ruling Case Law, vol. 11, subject, Exemptions, pp. 542, 543, § 59, we copy as follows: "The right of a person engaged in a particular trade, business or profession to claim as exempt from execution his tools, implements or other property necessary to enable him to pursue his calling, is dependent upon his making use of them in the pursuit of his occupation. The object of the exemption is to enable him to carry on his trade or business and not to favor him merely because he possesses a particular kind of skill or learning. Therefore if he voluntarily abandons his occupation and does not contemplate prosecuting it, his tools, appliances and the like lose their exempt character and are subject to attachment and execution. Accordingly it has been held that where one leases his tools for two years with the privilege on the part of the lessee to purchase them within one year and engages in another occupation he loses his right to claim an exemption of the tools from execution. Of course a temporary abandonment of one's occupation will not result in a loss of the right of exemption, when coupled with an intention to resume it as soon as circumstances will permit."

In this case defendant voluntarily abandoned his trade of secondhand furniture

dealer at Opelousas, and there being no evidence indicating an intention on his part to follow elsewhere within any time soon, the same trade under similar conditions under which he did business there, and which he claims renders necessary the use of a truck in connection therewith as a tool or instrument of his trade, it is no use to decide whether this truck, the stepladder, gas stove, and tools which he says he loaded in to it from plaintiff's building are exempt or not. For no matter whether this truck, stepladder, gas stove, and other articles loaded in it were necessary tools or instruments of his trade or mere conveniences in the exercise of the same, immediately upon his abandonment of the trade, without showing an intention, within a reasonable time thereafter to resume and follow his trade elsewhere, the truck, stepladder, gas stove, etc., became liable to seizure for the payment of his rent. Defendant testifies that after he reached the residence of his father-in-law he loaded some other things into the truck; his claim is that these other things were in it at the time of the seizure. The things found in it at the time of the seizure were, in our opinion, loaded into it from plaintiff's building, and are therefore subject to plaintiff's claim for unpaid rent.

Defendant, after having been by the lower court authorized to prosecute the suit and to appeal without being bound for the cost, was by the court condemned to pay the cost. The evidence received on the trial showed the truck and its contents as the property of the defendant, and liable for the cost. The judgment appealed from on both the main demand and the demand in reconvention is correct. Judgment affirmed. Defendant appellant to pay the cost in both courts.