

## In re WADE.

### No. 6662.

District Court, W. D. Louisiana,
Monroe Division.

Oct. 6, 1945.

452

J. Norman Coon, of Monroe, La., for plaintiffs.

Ben F. Roberts, of Shreveport, La., and Leslie L. LaCroix, of Columbia, La., for defendant

DAWKINS, District Judge.

Petitioners seek a review of the referee's decision sustaining a claim of exemption to certain machinery and equipment used in the publication of the Caldwell News, Inc., a weekly newspaper published in Columbia, La. The claim was made under Article 644 of the Louisiana Code of Practice, which exempts from seizure for debt the tools and instruments used in a trade or profession.

Prior to filing the petition and adjudication of voluntary bankruptcy, petitioners and Wade had engaged in extensive litigation in the state court. Among other things, this same claim of exemption had been raised, tried extensively and submitted on January 24th, some fourteen days before the adjudication on February 7, 1945. Formal judgment rejecting the claim was not signed until February 12th, five days later. When filing his bankruptcy petition and schedules, Wade made no claim of exemption and this was first broached during his examination at the meeting of creditors on February 19, 1945. The amendment claiming the exemption was not filed until February 28, 1945.

At the trial before the referee, petitioners offered in evidence the records of the various proceedings in the state court. They were met with an objection of irrelevancy from the bankrupt, and the referee deferred his ruling until he was to pass upon the merits, at which time he ruled them admissible, but indicated that he attached very little or no importance to those documents. It is the view of this court that those proceedings were admissible to present a clear picture of the activities of the bankrupt as they affect his present claim to the exemption. They will be summarized briefly as follows:

Petitioners, Willa A. and James W. Sasser, had, several months earlier, sold to Wade the property comprising the plant of the Caldwell Watchman, the name under which the newspaper had been published for a long time, partly for cash and the balance on terms secured by chattel mortgage. Upon failure to pay three or more instalments, the mortgage was foreclosed by executory process, and the property bought in by the Sassers for about one-sixth of the purchase price, or $1,000, on November 4, 1944. On November 9th following, petitioner filed suit for a deficiency judgment of $5,927, less $300 paid in instalments and a credit of $898.87, representing net proceeds of the foreclosure, plus ten per cent attorney's fees. Wade made no appearance and a judgment by default was entered on December 14, 1944. On December 28th following, the Sassers filed a statutory proceeding for examination of the debtor against Wade, which was taken up on January 3, 1945.

In the meantime on December 6, 1944, a state charter was issued to the Caldwell News, Inc. In their statutory proceeding, petitioners attacked as fictitious this corporation, as well as certain chattel mortgages given on the assets claimed by it and which had been acquired after the preceding foreclosure against Wade, on the property used in publishing the Caldwell Watchman.

On the day of the hearing, January 3, 1945, the Sassers had a writ of fi. fa. issued on their default judgment and seized all Wade's property, including the machinery and equipment now claimed as exempt. On January 19th, Wade filed, under the same docket number (4959) as the statutory

proceeding for examination of the debtor, his petition for injunction to stay the seizure and sale of the machinery and equipment under the same claim of exemption as urged here. This, with the other proceedings as described above, was tried at length on January 24th, on which day a preliminary injunction was issued "against the sale of the property seized under the writ of fiera facias sought herein, as described in the notice of the seizure attached to the petition, and offered in evidence herein on the trial hereof, pending a decision on the petition for permanent injunction", other than the automobile and household furniture.

On January 22, 1945, the Sassers filed a mandamus proceeding, under state law, to have cancelled a chattel mortgage placed by Wade upon the property used by the Caldwell News, Inc., to secure his note of the same date, September 16, 1944, for the sum of $5,000, payable to his own order, due twelve months after date bearing eight per cent interest, and recorded on the same date in the records of Caldwell Parish. It was alleged that said note was held by Mrs. A. J. Chambler and her husband, sister and brother-in-law, respectively, of Wade, residents of Pontotoc County, Okl. The sheriff and clerk for Caldwell Parish were also made parties, the latter for the purpose of having him directed to cancel the mortgage from his records, and service was made upon the absentees through a curator ad hoc. Answer to the petition of Wade for injunction was filed by the Sassers on the day of the trial, January 24th, putting at issue the claim of exemption on numerous grounds. Before beginning the trial in the state court on that date, it was stipulated that the pleadings should be treated as presenting, and the case would be tried upon, the merits of the demand for permanent injunction. It was stipulated as follows:

"It is stipulated by all parties that the answer filed to the rule for preliminary writ of injunction will also be treated as an answer in full to the petition for permanent injunction.

"By agreement of counsel this demand is fixed for trial at this time on the main demand for a permanent injunction, and the hearing which will be held at this time will be a trial both on the application for a preliminary writ of injunction and on the main demand for permanent injunction.

"Counsel for both sides stipulate at this time, prior to hearing, that they will not apply for a rehearing, regardless of the decision in the case, in order that the judgment may become effective immediately upon its rendition; reserving all rights as to appeal or to application to the Superior Court for writs."

On January 26th, the curator for the Chamblers excepted to the jurisdiction in personam, plead misjoinder, prematurity and no cause of action to the mandamus proceeding, and in the same document, all defendants, including Wade, the curator for Chamblers, the sheriff and the clerk, answered to the merits. On February 12, 1945, counsel for Wade, acting also. as curator for the Chamblers, filed in the state court a motion, setting forth that Wade had been, on February 7th, adjudged bankrupt and praying for dismissal of the mandamus proceeding. On the same day, the state judge signed and filed a judgment in favor of the Sassers and against Wade, the Chamblers, and the clerk, reciting that "the rule having been made returnable before this court on January 26, 1945, at 10 o'clock, A.M., but, by consent of all parties, having been continued and made returnable on February 12, 1945, at 10 o'clock, A.M., on which date the rule was regularly taken up and tried, and the court finding the law and evidence in favor of relators and against the defendants in rule", the mortgages were ordered cancelled and erased, including that upon the machinery and equipment of September 16, 1944. On the same day, that is, February 12, 1945, the state court also rendered judgment dismissing the petition for injunction which had sought to prevent the sale of the property claimed as exempt under Article 644 of the Code of Practice. On February 28, 1945, a writ of fi. fa. was again issued for the seizure of the property now in dispute, but the sheriff's return shows that it was "released to H. H. Blanks, trustee of E. E. Wade, Bankrupt".

The bankruptcy law, 11 U.S.C.A. § 11(11), vests in this court exclusive jurisdiction to determine exemptions (In re Bordelon, D.C., 4 F.2d 285, and authorities cited therein), but it is bound to follow the interpretation placed upon state statutes by decisions of the state courts. This court will therefore consider the testimony of Wade given in the state court, along with that before the Referee, insofar as it tends to reveal the true status of the property claimed as exempt, and the relation of the bankrupt to it. The proceedings in the state court, particularly the contentions, conduct

and testimony of Wade, are inextricably woven together with those in this court, and the truth can best be ascertained by consideration of both.

We have a debtor here, who, for some reason, had failed to pay instalments on the purchase price of the Caldwell Watchman, for the months of May, June, July and August, amounting to $300, buying other machinery of the same type and giving a chattel mortgage on it to his sister for $5,000 as of September 16th of the same year; that he allowed the chattel mortgage and vendor's lien on the property of the Caldwell Watchman, purchased from the Sassers, and for which he had agreed to pay nearly $6,000, to be foreclosed and bought in by the former owner for the sum of $1,000, while at the same time he was investing several hundred dollars in new machinery and equipment; that he also placed a chattel mortgage on his automobile for the sum of $375, more than its worth, for money alleged to have been borrowed from his mother-in-law to pay doctors' bills; that he permitted the former owners of the newspaper plant to get a deficiency judgment by default against him for some $5,000; that, a few days thereafter, a corporation was organized, the major portion of whose stock was subscribed by his said mother-in-law, Mrs. Masters, his wife and himself, with two friends taking small amounts; that none of the money representing this stock was ever placed in the bank account of the corporation, although it maintained such an account at the local bank in Columbia, Louisiana; that, after the formation of the corporation, a resolution was passed by it, signed by Wade as president, for the leasing to it of the new machinery, etc.; that the consideration for the lease was the assumption by the corporation of certain indebtedness upon the newly acquired property to be paid in monthly instalments; that at the same time Wade assigned to it the lease upon the building which had been occupied in operating both newspapers, and the corporation paid the first month's rent due thereunder, on January 1, 1945. While no formal lease was actually signed, he and the corporation, under the management of Wade and his wife, as president and treasurer, proceeded to carry out the terms of the resolution by paying instalments on the indebtedness due for the new machinery and equipment leased from Wade; and his personal expenses. Wade stated that neither he nor his wife had drawn their agreed salaries as such, because insufficient money had been taken in for that purpose between December 6, 1944, when the corporation began business, and the seizure on January 3, 1945.

After trial of the two proceedings in the state court on January 24th, to which he was a party, Wade testified that a meeting of stockholders was held in his home, on January 27th, at which a resolution was passed for the dissolution of the corporation chartered the month preceding. He admitted, however, that nothing had been placed of record to show the fact, nor had any information concerning it been given to the Sassers until after the adjudication.

In the state court he stated positively that all the subscriptions to the stock had been refunded in cash, including that of his mother-in-law, Mrs. Masters, who had taken the largest number of shares, some 200, and for which she had also paid cash, the sum of $5,000; but in the bankruptcy hearing, he stated she did not have to be refunded for the reason that she had the money in a bank in Shreveport, on which she could draw a check in her own favor, and that he also got the money from her to pay Wingert and Joiner. He also had repeatedly insisted in the state court that his wife was treasurer of the corporation, had kept all the funds, and that he did not know where they were deposited. An officer of the bank with which the corporation did business was called and produced the account, but there was no indication that any of this money paid for stock had been deposited there. Mrs. Wade was present in the state court when the first trial began on January 3, 1945, but, according to Wade, suddenly became ill and never appeared again, notwithstanding counsel for the Sassers inquired more than once as to whether she had sufficiently recovered to be called as a witness. Neither were any of the other relatives or persons, whose money was supposed to have been used, ever called to corroborate Wade's statement that large sums had been paid in cash, in one instance, by his sister, as much as $1,500 on the occasion of a casual visit to his home, nor did he produce any writing to show such advances.

■ It may seem a hard bargain for the Sassers to be restored to the ownership of the property sold by them within a few months, after collecting some cash on the price, and then winding up with a judgment against Wade for almost as much as he

agreed to pay for it. But courts do not make bargains for the parties; it is their duty to enforce them as made.

 Considering all these circumstances, it seems logical to conclude that Wade, for some reason not made clear, decided not to go through with the trade by which he had purchased the newspaper and its property under the original name of Caldwell Watchman, notwithstanding his admission that he could have gotten the money to pay those obligations, but did not because of some grievance against the Sassers. It also seems probable that he determined to incorporate the business and mortgage the property to prevent the Sassers from reaching it with their deficiency judgment. However, after discovering the predicament into which he had gotten himself by forming a separate corporation and leasing his printing machinery to it, on which he now claims exemption, a hasty retreat was started to restore this property to his own control in order to support the exemption. As previously stated, his testimony in the state court was rather clear that he had leased this property to the corporation, and, after payment of the indebtedness against it, the same was to belong to it, but in the hearing before the Referee, he swore that he had never leased, nor sold, this machinery and equipment to the corporation. This position was evidently taken after discovering his plight, and he sought to take advantage of the fact that he had not formally executed a written lease, nor had the corporation done more than to pay a few instalments on the indebtedness, and the first month's rent on the building. At the time of the seizure, according to the testimony of Wade in the state court, he had, in effect, sold the machinery to the corporation, the price being payment of balance due on it. When this had been paid in full title was to vest in the corporation. He had abandoned his trade or business as an individual. Mosely v. Doran, La.App., 163 So. 198.

The matter must be resolved as of the date of the seizure on January 3, 1945. Garner v. Freeman, Sheriff, 118 La. 184, 42 So. 767, 118 Am.St.Rep. 361. On that date, the property was taken into custody of the state court and was so held until it was surrendered to the Trustee after adjudication. Wade could not, by the expediency of dissolving the corporation for the purpose of cancelling the lease and returning the property to himself, extricate it from the seizure or destroy the rights of a creditor who had seized it while being held under the lease to the corporation. It is true that he was using it at that time, but, in view of what had been done, this control must be held to have been for the corporation and not for himself. He can not be permitted to blow hot and cold, as may suit his purpose. His attempt to cover up through the corporation and his relatives having failed, he can not now be permitted to change positions pending the litigation in order to claim the exemption. To do so would amount to a fraud. His sister has waived the alleged mortgage of $5,000 on the property and is pressing her claim in this court as an ordinary creditor only.

There should be judgment denying the exemption and ordering the trustee to administer the property.

Proper decree should be presented.